1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JOHN A. MARTIN, | )  1:08cv01206 GSA |
| | ) |
| | ) |
| | )  ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | )  SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

11
12
13
14
15
16
17
18

19                                     **BACKGROUND**

20          Plaintiff John Albert Martin ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner") denying his application for supplemental

22  security income pursuant to Title XVI of the Social Security Act.  The matter is currently before

23  the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

24  Gary S. Austin, United States Magistrate Judge. [1]

25
26
27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 17, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

## FACTS AND PRIOR PROCEEDINGS[2]

On January 16, 2005, Plaintiff filed an application for supplemental security income, alleging disability since November 15, 1998, due to right elbow deformity and chronic pain. AR 21, 52. The application was denied initially and upon reconsideration. AR 18. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. ALJ Theodore T. N. Slocum held a hearing on November 21, 2006, and issued an order denying benefits on February 22, 2007. AR 18, 25. On July 2, 2008, the Appeals Council denied review. AR 4.

Hearing Testimony

ALJ Slocum held a hearing on November 21, 2006, in Sacramento, California. Plaintiff appeared[3] and was purportedly represented by Ronald D. Miller, an attorney, who did not appear at the hearing. AR 18. Vocational Expert ("VE") Jim Van Eck also testified at the hearing. AR 18, 215-224.

The following represents the ALJ's recitation of the record:

> The claimant initially filed an application on August 28, 1990, and it was denied January 24, 1991. He refiled on August 26, 1991, with a protected filing date of July 9, 1991, and it was denied on April 28, 1992. It appears that there was no hearing on either of these first two applications. He refiled on April 23, 1993. It was denied on August 30, 1993. He requested a hearing on July 11, 1994, with a Decision by the judge on November 2, 1995. So he has been through at least one hearing. He applied again on December 9 - - 19, 2001. It was denied on February 21, 2002. He made a request for a hearing on January 23, 2003, and there was a Decision by a judge on December 17, 2003. So he has been through two prior hearings, one as recently as about three years ago. He should know the proceedings. He has an address here in

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The normal course of the proceedings were interrupted by Plaintiff's conduct, and the fact that Plaintiff was asked to leave as a result of his behavior. Consequently, the hearing consisted of the ALJ reading matters into the record, and the VE's testimony. After having had Plaintiff removed from the hearing room as a result of his uncooperative and "obstreperous" behavior, the ALJ declared him a nonessential witness and proceeded without him. AR 210, 211. The events leading up to Plaintiff's ultimate removal had much to do with his objection in continuing without representation, and his annoyance at not having been granted postponement of the hearing per his requests. AR 204-211. Plaintiff was further incensed by the ALJ's seeming indifference to his requests for medical attention. Plaintiff claimed that he had just recently undergone surgery and was feeling faint. AR 205-210. The ALJ determined that Plaintiff had "plenty of vigor," and having forcibly removed him from the hearing room, resumed the hearing without him. AR 210-211.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sacramento on Hillsdale Boulevard, which is about five miles north of this hearing site, and he did - - he was properly noticed in this case by Notice of Hearing on September 21, 2006. He returned an acknowledgment of Hearing on September 27, 2006, indicating that he would be present at the hearing. He showed up timely today, and he does make a notation on his Notice of Hearing that because of late notice - - this is September 27, 2006 - - that he is writing this - - for the hearing need more time for attorney can review claim. I am making a finding that the two month period between September 27 and today, November 21, is adequate time for the attorney to have made arrangements to review the file. There are plenty of experienced and competent and non-attorney representatives in this area who specialize in this type of hearing.

Now as I looked at the file this morning . . . I note that we have a fax from something called Disability Group in Santa Monica, and it's got an Appointment of Representative, 1696, signed on November15, 2006, giving a Santa Monica address, and no attorney has entered an appearance prior to this time, though it's been over two months since the case has been noticed, and then a company - - this 1696 cover - - is a letter of November 15, 2006, from an attorney Robert A. Baron in Spokane, Washington, advising, Please be advised that I am withdrawing as representative in the above entitled matter and leaving any right I have to claim an attorney's fee, and that's the Law Firm of Huddler, Wells, Baron & Manning, which indicates that the Claimant has had his file reviewed by an attorney who withdrew on November 15, six days ago. Interestingly, five days ago. Simultaneously under the letterhead of Disability Group of Santa Monica, California, also dated November 15, 2006, is a letter from a case manager, and a - - there's a 1696 also dated November 15, 2006, signed by the Claimant on October 20, 2006, 30 days ago. The attorney is making his first contact with this office not quite a month after he has submitted and had the Claimant sign his 1696. The attorney does request a continuance for this hearing and the fax wasn't made until, according to the markings on this paper, November 16, 2006, and it was just brought to my attention this morning.

The Claimant, as the record should show was very obstreperous and quite energetic as he came in here today and because of his misconduct I have had him removed from the hearing room. I am prepared for the hearing. I have reviewed the records. We have the Claimant filed this claim on February 23, 2005, and that is not quite two full years ago. He requested this hearing on January 23, 2006, which is a full ten months ago. He's had plenty of time to get an attorney. He has been through the proceeding twice with hearings. This is apparently his fourth application. I noticed that the exhibits in this are preceded by the capital letter D, as in Delta, which would indicate that at least four prior applications have been filed.

This last second appearance of counsel in a case this old with so many prior applications is not acceptable to me, and the other thing is that he's hiring counsel about as far away as he can get and still be here on the West Coast, Santa Monica, California, is in Los Angeles County, slightly over 400 miles south of this hearing site and Spokane, Washington, is in Northeastern Washington, probably slightly over 1000 miles from this hearing

1
2
3
4

> site. These have not been reasonable efforts by the Claimant to
> retain counsel, so I am rejecting them, although he does show that
> he knew how to get counsel, he's had plenty of time to do so, so I
> am going forward with the case based on the merits of the matter
> before me. I am admitting into evidence all of the exhibits in all six
> sections of the Social Security Exhibit File.

5   AR 211-215. The ALJ then swore in the VE who testified as follows:

6       Jim Van Eck is an independent vocational contract witness in Sacramento, California. AR

7   215. The VE reviewed Plaintiff's file and noted that the work history report was incomplete in

8   terms of dates. AR 216.  While the VE felt that the dates would be helpful, he nevertheless

9   concluded that the work was mostly at the semi-skilled and unskilled levels, therefore, the dates

10  would be of minor significance to his further testimony. AR 216.

11      When asked to recount Plaintiff's work history in the fifteen-year period preceding his

12  date of application in February 2005, the VE replied that the only date he had to go on was the

13  year 2001. AR 216. The VE then identified the following vocation: telemarketer, Dictionary of

14  Occupational Titles ("DOT") 299.357-014, with a Specific Vocational Preparation ("SVP") of

15  three, at the sedentary exertion. AR 217. The VE also noted Plaintiff's work as a reception clerk,

16  which was DOT 237.367-010, with an SVP of three, at the sedentary exertion. AR 217. Finally,

17  the VE mentioned that Plaintiff had been a tag clerk, or in other words, an inventory clerk, with a

18  DOT of 209.587-034, SVP two, at the light exertion. AR 217. When asked about transferability,

19  the VE replied, with regard to the sedentary jobs, "he's at the lowest level of exertion with those

20  two jobs for which any residual transferability exists." AR 218.

21      The ALJ then posed the following hypothetical: the VE was asked to assume a person

22  with Plaintiff's vocational profile, aged thirty-six, who would have been thirty-five at the time

23  the application was filed, with a high school education, and substantial gainful activity during

24  1999 and 2000. AR 221-225. The individual had a bad right elbow and had the residual

25  functional capacity ("RFC")[4] to perform one-arm work, could lift ten pounds frequently and

26

27      [4] The ALJ then interposed his view that Plaintiff had not provided them with any medical information since
October of 2005, but that the ALJ's RFC determination was based on the medical evidence contained in the record
28  up until October 2005, which was eight months beyond the filing date of February 2005. AR 220.

4

twenty pounds occasionally with his left upper extremity, could only use the right upper extremity as a helper and could reach occasionally and handle occasionally with the right hand. *Id*.

The ALJ also added that this hypothetical worker  was precluded from working on ladders, roofs and scaffolds, and was limited to occasional crawling; yet could do the following frequently: climbing ramps and stairs, balancing, stooping, kneeling, and crouching. AR 221. Additionally, the hypothetical person was moderately limited in his ability to understand, remember and carry out detailed instructions, could do calculations very well, was alert and active, with good concentration, and good recall, and with good short term memory and long term memory. He would be able to perform simple repetitive tasks in a minimal manner, could accept instructions from supervisors and interact positively with co-workers and the public, with the ability to perform work activities on a consistent basis and maintain regular attendance, complete a normal workday and work week without interruptions from his psychiatric conditions which are likely to improve over the next twelve months. AR 222. More specifically, this hypothetical person was quite stable, with some depressive symptoms, but other than that was capable of functioning in a work like setting without decompensation from his psychiatric illness, which was likely to be done within twelve months. AR 221-23.

When asked if the aforementioned hypothetical worker could perform any of Plaintiff's prior work, the VE replied "no." AR 223.

The ALJ then asked if there was any other work available in significant numbers in the regional and national economy which the hypothetical person could perform. AR 223.

In response, the VE identified the job of a counter clerk, or a retail counter clerk in certain kinds of businesses, for example, photo finishing-DOT 249.366-010. This was classified at the SVP of two at the light exertion. AR 223. There were approximately 120 such jobs available in Sacramento County, 1,800 statewide, and 16,000 nationwide. AR 223.

The VE proposed that another job would be an investigator of dealer accounts, which entailed calling people and checking on accounts. AR 224. Such jobs are performed in financial institutions, the DOT being 241.367-038. This job too was SVP two at the light exertion. AR

224. There were 300 such jobs available in the county, 5,300 in the state, and 34,000 in the nation. AR 224.

Finally, the VE identified the job of an election clerk, which is performed by government services and has a DOT of 205.367-130.[5] That also had an SVP of two, at the sedentary exertion. There were approximately 150 such jobs available regionally, 2,500 statewide, and 5,000 nationwide. AR 224.

The VE then affirmed that his selections were based upon his consideration of the hypothetical person, specifically with regard to the limitations of the right arm, which from the record appeared to be the dominant arm. AR 224.

Medical Record

The entire record was reviewed by the court, however, only those portions relevant to the instant proceedings are briefly summarized below.

A radiology note from  Mercy General Hospital, dated January 21, 2004, indicated that Plaintiff had an old fracture deformity related to a supracondylar fracture of the distal humerus. AR 173. The impression was an old fracture deformity with resultant posttraumatic osteoarthritis. AR 173.

On May 5, 2004, Plaintiff underwent a right elbow fascial interposition arthroplasty with fascia lata graft, performed by Paul Gregory, M.D., at Mercy San Juan Medical Center (MSJMC). AR 125. On that occasion, Plaintiff was prescribed Norco for pain control. AR 126.

An outpatient discharge report from Catholic Healthcare West (CHW), dated November 16, 2004, indicated that Plaintiff had attended seven physical therapy sessions, pursuant to referral by Dr. Gregory. The report also noted six no-shows and three cancellations and indicated that patient goals had not been met, and that the patient was non-complaint with the treatment plan. AR 123.

///

///

---

[5] This is a mischaracterization. The correct DOT code for Election Clerk is 205.367-030, as opposed to that given above.

1    A radiology report from MSJMC, dated January 15, 2005, showed severe deformity of

2    the right elbow with abnormal distal humerus, and marked degenerative changes of the radius

3    and ulna. AR 122.

4    In an orthopaedics clinic note dated March, 8, 2005, Robert H. Allen, M.D., with the UC

5    Davis Health System (UCDHS) noted Plaintiff had a grossly deformed elbow with a limited arc

6    of pronation and supination and a very limited arc of flexion and extension. Dr. Allen's

7    impression was dislocation following right elbow interposition arthropathy. AR 144. On that

8    occasion, Dr. Allen also went over the following therapeutic options: (1) a re-do of Plaintiff's

9    fascial interpostion arthropathy with medial and lateral ligament reconstruction and an external

10   fixator, (2) artificial elbow, a so-called total elbow arthropathy, (3) elbow fusion, and (4)

11   allograft replacement of the elbow. AR 144.

12   David Pong, M.D., completed a physical RFC assessment of Plaintiff on April 12, 2005,

13   and opined that Plaintiff could lift and/or carry twenty pounds occasionally, ten pounds

14   frequently, using the right arm as helper only. AR 135-142. Plaintiff could also stand and/or walk

15   for a total of about six hours in an eight-hour workday. AR 136.  Plaintiff was precluded from

16   pushing or pulling with the right upper extremity. AR 137. Dr. Pong also reported that Plaintiff

17   could do the following frequently: climbing, balancing, stooping, kneeling, and crouching, and

18   occasional crawling. AR 137. Dr. Pong also noted manipulative limitations with regard to right

19   arm reaching and handling, finding that Plaintiff could do either only occasionally. Dr. Pong did

20   not report any visual, communicative or environmental limitations. AR 138-139.

21   A MSJMC surgical pathology/cytology report, dated May 6, 2005, showed right elbow

22   debridement, and degenerative arthritis. AR 128.

23   A work status form from UCDHS completed by Dr. Allen on June 6, 2005, was annotated

24   as follows: "Mr. Martin has a chronically dislocated 'right' elbow and has no function of his

25   'right' arm. He is permanent and stationary with full disability because of no use 'right' arm."

26   AR 143.

27   A report from the Midtown Medical Center showed that Plaintiff had been prescribed

28   Kadium on October 19, 2005, in order to alleviate pain in his right elbow. AR 160.

On October 31, 2005, Hisham Soliman, M.D., performed a comprehensive psychiatric evaluation of Plaintiff. AR 175-178. Dr. Soliman diagnosed Plaintiff with depressive disorder, not otherwise specified, but opined that Plaintiff was likely to improve within the next twelve months or so with appropriate management and planning. AR 177. Dr. Soliman also determined that Plaintiff would be able to perform simple, repetitive tasks, and should be able to accept instructions from supervisors and interact positively with coworkers and the public. AR 178. Dr. Soliman also added that Plaintiff should be able to do work activities on a consistent basis and maintain regular attendance and complete a normal workday and workweek without interruptions from his psychiatric condition. AR 178. On the basis of his evaluation, Dr. Soliman concluded Plaintiff was quite stable, with some depressive symptoms, but other than that, he should be able to function in a work like setting without decompensation from his psychiatric illness. AR 178.

On November 16, 2005, C. Eskander, M.D., reviewed all the evidence in the file and the assessment of April 4, 2005, performed by Dr. Pong, and affirmed Dr. Pong's findings. AR 142.

A psychiatric review technique form (PRTF) completed by E. Harrison, M.D., dated December 14, 2005, indicated that Plaintiff had affective disorders and had moderate restriction of activities of daily living. AR 183-193. Plaintiff also exhibited mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 193.  Plaintiff had no episodes of decompensation. *Id*.  Dr. Harrison also completed a mental RFC assessment of Plaintiff and found that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, and in his ability to carry out detailed instructions. AR 197. Dr. Harrison opined that Plaintiff would be able to carry out, sustain and adapt to only simple repetitive work. AR 199.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 15, 1998, the alleged onset date, and that Plaintiff  had the following severe impairments: right elbow deformity and depression. AR 20. Nonetheless, the ALJ determined these severe impairments did not meet or medically equal any listed impairments so as to result in a finding of disability. AR 20.

1   Although Plaintiff also alleged that he had schizophrenia, the ALJ determined that the

2   record failed to show that he had that particular impairment. AR 20.

3   Based on a careful consideration of the entire record, the ALJ determined that Plaintiff

4   retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, using

5   the right hand as a helper only, and that Plaintiff was precluded from working on ladders, ropes,

6   or scaffolds. AR 21. Plaintiff could occasionally crawl, and frequently balance, stoop, crouch or

7   kneel. AR 21. He would be limited to occasional reaching and handling with the right upper

8   extremity. The ALJ also found Plaintiff had moderate limitations in understanding, remembering

9   or carrying out detailed instructions, and that he could perform simple repetitive tasks, and would

10  be able to interact appropriately with others in the workplace. AR 21. Plaintiff would also be able

11  to maintain regular work attendance. AR 21.

12  Given this RFC, the ALJ concluded that Plaintiff would be unable to perform any past

13  relevant work. However, considering Plaintiff's age, education, work experience and RFC, the

14  ALJ found that there were jobs that existed in significant numbers in the national economy that

15  Plaintiff could perform. AR 24.

16  <u>**SCOPE OF REVIEW**</u>

17  Congress has provided a limited scope of judicial review of the Commissioner's decision

18  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

19  the Court must determine whether the decision of the Commissioner is supported by substantial

20  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

21  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

22  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

23  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

24  401.  The record as a whole must be considered, weighing both the evidence that supports and

25  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

26  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

27  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

28  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) is unable to perform his past relevant work as a telemarketer, reception clerk, or inventory clerk, and (5) retains the RFC to perform jobs that exist in significant numbers in the national economy. AR 20-24.

Here, Plaintiff argues that the ALJ (i) erred in failing to offer clear and convincing reasons for rejecting Plaintiff's subjective pain testimony, and (ii) erred in failing to satisfy his duty to fully and fairly develop the record. Therefore, Plaintiff contends that this Court should reverse and either order the immediate payment of benefits, or remand for further proceedings. ///

**DISCUSSION**

A.    Excess Pain And Credibility Analysis

Plaintiff contends that the ALJ erred in failing to properly evaluate his subjective pain testimony. More specifically, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for disbelief." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where the ALJ does not find "affirmative evidence" that the claimant is a malingerer, his "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.
>
> Social Security Administration Rulings specify the proper bases for rejection of a claimant's testimony ... An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed. Reg. at 57860 ("Although Social Security rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see *Daniels v. Apfel*, 154 F.3d 1129, 1131(10th Cir. 1998)(concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).

The ALJ is required to make specific findings assessing the credibility of a plaintiff's subjective complaints. *Ceguerra v. Secretary of HHS*, 933 F.2d 735, 738 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834, quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*., citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Once a claimant produces medical evidence of an underlying impairment likely to cause the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely because the evidence does not support plaintiff's statements. *Lester v. Chater*, 81 F.3d at 834, citing *Bunnel v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). "The ALJ may consider at least the following factors when weighing the claimant's credibility: [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id*. (citing *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing." *Id*.

Here, ALJ Slocum made specific findings regarding Plaintiff's credibility. AR 20-24. He identified with specificity the evidence he relied upon in concluding that the objective evidence did not support Plaintiff's disabling limitations to the extent alleged. Having reviewed the entire record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. AR 21.

For instance, the ALJ observed that "the claimant's musculoskeletal impairment has not resulted in motor loss, reflex changes, neurological deficits or the degree of functional loss required by the musculoskeletal listings." AR 21. The ALJ also noted that Plaintiff had no limitations involving standing, walking, or sitting. Although Plaintiff had indicated that he could not do most activities, the ALJ determined that "Plaintiff's allegations were not credible based on the evidence, which showed that he had a fully functional left arm, and no lower extremity impairment." AR 23. Furthermore, the ALJ stated that "The claimant's depression has not resulted in marked limitations in two or more areas of mental functioning. The claimant does not require a highly structured and supportive environment for adequate functioning." AR 21.

The ALJ also noted that Plaintiff began physical therapy following his right elbow arthroplasty on May 6, 2004, but that he only attended seven sessions. Plaintiff had "six no shows and three cancellations." AR 21. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)(claimant's failure to seek or follow prescribed treatment is a proper basis for finding his allegations of disabling pain and other symptoms not credible).

Additionally, the ALJ noted that Plaintiff alleged having schizophrenia and depression. However, he was receiving no mental health treatment. Therefore, a psychiatric consultative examination was performed by Hisham Soliman, M.D., on October 31, 2005. Plaintiff said that he had been seen by a Disability Psychiatrist in the past and had been prescribed Prozac by his primary care physician. However, he reported no mental health treatment or past psychiatric hospitalization. AR 22. The ALJ observed that "the claimant has also alleged extreme pain. However, the record shows that he has been successfully treated with strong prescription pain medication. There is no indication that the medication was not effective nor any evidence of significant ongoing side effects." AR 23. The ALJ reported:

> Regarding the claimant's mental limitations, the undersigned finds that the claimant's allegations of paranoia and severe cognitive limitations related to a mental disorder and/or pain are not credible because they are unsupported by the record. There is no evidence of complaints of cognitive difficulties in the medical records. There are minimal complaints of depression. Although the claimant alleged having schizophrenia, this is totally unsupported by any medical evidence or observation in the record. The claimant has sought no mental health treatment, and has merely been prescribed Prozac, which would be expected to result in improvement in his mild depressive symptoms.

13

1   Id.; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider the lack

2   of medical treatment in assessing credibility); *Morgan v. Commissioner of Social Sec. Admin.*,

3   169 F.3d at 599 (ALJ's finding that symptoms improved with medication was valid consideration

4   in assessing claimant's credibility). The ALJ also found that there was no evidence of side effects

5   from the medication. AR 23.

6        In evaluating the credibility of the symptom testimony, it appears that the ALJ did

7   consider the factors set out in SSR 96-7p and 20 C.F.R. §§ 404,1529c(4)(i)(vii),

8   416.929(c)(4)(i)(vii). See *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), and *Bunnel v.*

9   *Sullivan*, 947 F.2d at 346. The SSR directs the ALJ to consider the following factors in addition

10  to the objective medical evidence when assessing the credibility of the claimant's statements:

11      1. The claimant's daily activities;

12      2. The location, duration, frequency, and intensity of the claimant's pain or other

13        symptoms;

14      3. Factors that precipitate and aggravate the symptoms;

15      4. The type, dosage, effectiveness, and side effects of any medication the claimant takes

16        or has taken to alleviate pain or other symptoms;

17      5. Treatment, other than medication, the claimant receives or has received for pain relief

18        or other symptoms;

19      6. Any measures other than treatment the claimant uses or has used to relieve pain or

20        other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every

21        hour, or sleeping on a board) ; and

22      7. Any other factors concerning the claimant's functional limitations and restrictions due

23        to pain or other symptoms.

24       The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec.*

25  *Admin.,* 119 F.3d at 792. Additionally, the ALJ may make inferences "logically flowing from the

26  evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Here, the ALJ's inferences were

27  amply supported by the evidence in the record. For instance, the record contained no documented

28  symptoms or treatment consistent with Plaintiff's allegation of schizophrenia. AR 20. The ALJ

1    also observed that Plaintiff failed to show up for several physical therapy sessions, indicating that

2    Plaintiff's claimed impairments may not be as debilitating as alleged. AR 21. Additionally,

3    Plaintiff's allegations that he could not do most activities was not supported by the fact that he

4    had a fully functional left arm, and no lower extremity impairments. AR 23. Plaintiff's

5    allegations of extreme pain were not supported by the record which demonstrated that Plaintiff's

6    pain had been effectively controlled with strong prescription pain medication. *Id*.

7          Therefore, based on his review of the entire record, the ALJ concluded that Plaintiff's

8    subjective complaints were not supported by the record as a whole, and he therefore discredited

9    Plaintiff's allegations of disabling pain as not being entirely credible. In sum, the ALJ is entitled

10   to resolve questions of credibility and conflicts in the testimony. *Sample v. Schweiker*, 694 F.2d

11   639, 642 (9th Cir. 1982). Here, the ALJ's credibility determination was supported by substantial

12   evidence, and was sufficiently specific to permit the Court to conclude that the ALJ did not

13   arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d at 958.

14   B.    Failure to Develop the Record

15         Plaintiff contends that the ALJ failed to satisfy his duty to fully and fairly develop the

16   record. More specifically, Plaintiff argues that the ALJ should have admitted the medical records

17   Plaintiff had in his possession the day of the hearing. Plaintiff also contends that the ALJ had a

18   heightened duty to develop the record fully and fairly, more so, because Plaintiff was

19   unrepresented. In short, Plaintiff argues that the Commissioner failed to even address Plaintiff's

20   aforementioned arguments.

21         It is Plaintiff's burden to produce full and complete medical records, not the

22   Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the

23   evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the

24   evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

25   (9th Cir. 2001).  The ALJ in a social security case has an independent duty to develop the record

26   fully and fairly and to assure that the claimant's interests are considered, and this duty extends to

27   the represented as well as to the unrepresented claimant. *Cox v. Califano*, 587 F.2d 988, 991 (9th

28   Cir. 1978). The ALJ may discharge this duty in one of several ways, including subpoenaing

1  claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or

2  keeping the record open after the hearing to allow supplementation of the record.  *Id.*

3      In general it is the duty of the claimant to prove to the ALJ that she is disabled.  20 C.F.R.

4  § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports a

5  disability determination, including medical or other evidence relating to the alleged impairment

6  and its effect on her ability to work.  *Id.*  For his part the ALJ has the responsibility to develop "a

7  complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical

8  reports."  20 C.F.R. § 404.1512(d).   If this information fails to provide a sufficient basis for

9  making a disability determination, or the evidence conflicts to the extent that the ALJ cannot

10  reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§

11  404.1512(e);  404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).

12      Here, the ALJ conducted a thorough review of the entire record, and thereafter made a

13  disability determination.  The ALJ noted that Plaintiff's allegations of schizophrenia were

14  unsupported by the record as a whole, since there was "no diagnosis of schizophrenia in the

15  record, and no documented symptoms consistent with that disorder." AR 20. The ALJ also

16  commented on the glaring absence of any prior mental health treatment. Therefore, a

17  comprehensive psychiatric evaluation of Plaintiff  was performed by Dr. Soliman on October 31,

18  2005. AR 22, 175-178. Although Dr. Soliman diagnosed depressive disorder, he added that

19  Plaintiff  would likely improve within twelve months or with proper treatment. AR 22, 177. The

20  ALJ also attached due weight to Dr. Soliman's findings that Plaintiff would be able to perform

21  simple repetitive tasks, and would likely be able to accept instructions from supervisors, and

22  would be able to interact positively with coworkers. AR 22, 177.

23      The ALJ also gave significant weight to the opinions of the non examining state agency

24  physicians. Based on a mental RFC assessment performed on December 14, 2005, Dr. Harrison

25  found that Plaintiff was moderately limited in his ability to understand, remember and carry out

26  detailed instructions. AR 23, 197. He opined that Plaintiff would be able to learn, carry out,

27  sustain and adapt to only simple repetitive tasks. AR 23, 199. Dr. Harrison also indicated on a

28  PRTF that Plaintiff was moderately restricted in activities of daily living, had mild difficulty in

1    maintaining social functioning, had moderate difficulty in maintaining concentration, persistence

2    of pace, and had no episodes of decompensation. AR 23, 193. Therefore, the ALJ noted that

3    "both Dr. Soliman and Disability Determination Service sources indicated that the claimant

4    could perform simple repetitive tasks, as found in the established RFC." AR 23.

5          However, the ALJ found that Dr. Allen's conclusive statements regarding Plaintiff's

6    disability less deserving of consideration. Specifically, Dr. Allen, Plaintiff's treating physician,

7    had noted that Plaintiff had "no function in his right arm, and stated that this rendered Plaintiff

8    totally disabled."  AR 23, 143. On the contrary, the ALJ found that "this is not supported by the

9    record which does not establish that the claimant has no use whatsoever of the right upper

10   extremity. In addition, the conclusion that this renders the claimant totally disabled is an opinion

11   reserved for the Commissioner." AR 23. "It is clear that it is the responsibility of the ALJ, not the

12   claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d

13   1044, 1049 (9th Cir. 2001). "Although we consider opinions from medical sources on issues such

14   as whether your impairment(s) meets or equals the requirements of any impairment(s) ... your

15   residual functional capacity or the application of vocational factors, the final responsibility for

16   deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). "If your case

17   is at the administrative law judge hearing level the administrative law judge is responsible for

18   assessing your residual functional capacity." 20 C.F.R § 404.1546(c).  "The opinion of the

19   treating physician is not necessarily conclusive as to either the physical condition or the ultimate

20   issue of disability." *Thomas v. Barnhart*, 278 F.3d at 957; *Morgan v. Commissioner of Social*

21   *Sec. Admin.*, 169 F.3d at 600. Having determined that Dr. Allen's conclusion of total disability

22   was unsupported by the record as a whole, the ALJ understandably chose to give the opinion

23   little weight. AR 23. On the other hand, the ALJ attached great weight to the opinions provided

24   by Disability Determination Service sources regarding Plaintiff's physical limitations because the

25   ALJ found them to be supported by the record, "which shows a right upper extremity impairment

26   for which the Disability Determination Service sources have assessed appropriate limitations."

27   AR 23. Although the contrary opinion of a non-examining medical expert does not alone

28   constitute a specific, legitimate reason for rejecting a treating physician's opinion, it may

1  constitute "substantial evidence" when it is consistent with other independent evidence in the

2  record. *Tonapetyan v. Halter,* 242 F.3d at 1148-1149. "In a Social Security disability proceeding,

3  an ALJ may discredit treating physicians' opinions that are conclusory, brief and unsupported by

4  the record as a whole, or by objective medical findings." *Batson v. Commissioner of Social*

5  *Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

6        The ALJ noted that Plaintiff's only physical impairment was his right upper extremity

7  disorder, and that Plaintiff had no limitations involving standing, walking, or sitting. Although

8  Plaintiff indicated that he could not do most activities, the ALJ determined that his allegation

9  was not credible based on the evidence, which showed that he had a fully functional left arm, and

10 no lower extremity impairment. AR 23. The ALJ further noted that although Plaintiff was right

11 hand dominant, it was likely that he had, since his accident at age seven, learned how to use his

12 left arm for many manipulative activities. *Id*. Additionally, the ALJ found Plaintiff's allegations

13 of extreme pain to be less than credible, since the record showed that Plaintiff had been

14 successfully treated with strong prescription pain medication with no significant ongoing side

15 effects, and there was no indication that the medication was ineffective.  *Id*. Having considered

16 all of the medical evidence, opinions, and Plaintiff's subjective complaints, the ALJ concluded

17 that Plaintiff could perform a limited range of light work.

18       Therefore, based upon his complete evaluation of the evidence, the ALJ appropriately

19 concluded that the record was adequate to make a disability determination, and under these

20 circumstances, where the evidence was neither ambiguous, nor the record inadequate, the ALJ

21 had no duty to further develop the record and the lack of representation did not affect the validity

22 of the hearing.

23 1.   Lack of Representation at the Hearing

24       Where the claimant is not represented, "it is incumbent upon the ALJ to scrupulously and

25 conscientiously probe into, inquire of, and explore for all the relevant facts" and to remain

26 "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are

27 elicited." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). The ALJ's duty is heightened

28 where the claimant's ability to protect his or her interests may be adversely affected, for instance,

1  where the claimant is unrepresented. *Id*.  "Lack of counsel does not affect the validity of the

2  hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness

3  in the administrative proceedings." *Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir. 1981). Thus, the

4  issue is not whether the right to representation was knowingly waived, rather, it is whether, in the

5  absence of representation, the ALJ met the heavy burden imposed by *Cox*. (Where the claimant is

6  not represented, it is incumbent upon the ALJ to "scrupulously and conscientiously probe into,

7  inquire of, and explore for all the relevant facts."). *Cox v. Califano,* 587 F.2d at 991.

8      Soon after the hearing commenced on November 21, 2006, Plaintiff was dismissed from

9  the hearing room on account of improper behavior. The ALJ stated in his decision "He is not a

10  material witness and further testimony is not required." AR 18. The ALJ also noted that although

11  Plaintiff was represented by an attorney, he was unaccompanied by counsel during the hearing.

12  Plaintiff appeared for his hearing and requested a postponement. His request for postponement

13  was denied and the hearing was held. AR 50. According to the ALJ, "The claimant and

14  representative had adequate time to prepare for the hearing." AR 18. Additionally, the ALJ

15  referenced exhibit D-8B (a letter addressed to Mr. Miller) outlining the reasons for the

16  postponement denial as follows: "(1) Claimant's written statement that his attorney needed more

17  time to review the case dated September 27, 2006 on the Acknowledgment of Receipt (notice of

18  Hearing); (2) Appointment of Representative signed by claimant on October 20, 2006; (3) Fee

19  Agreement signed by Ronald D. Miller on October 23, 2006 and; (4) Acceptance of Appointment

20  signed by Ronald D. Miller dated November 15, 2006." AR 50. Additionally, the ALJ wrote:

21          You had plenty of time to review and prepare the claimant's case since
        September 27, 2006. Attorneys should not be accepting any cases that they cannot
22      prepare in a timely manner. You should have appeared at the hearing and
        requested the postponement. You had no basis for assuming a last minute request
23      for postponement would be granted on the facts of the above stated documents.

24  *Id*.

25      As the hearing had been noticed since September 27, 2006, and Plaintiff had

26  been given ample time to prepare for the hearing, the ALJ was justified in denying the last-

27  minute postponement. The ALJ also observed that Plaintiff had been through four hearings to

28  date, and therefore should have been conversant with the hearing mechanism, including securing

representation in a timely manner.  AR 206.  "Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings."  *Vidal*, 637 F.2d at 714.  However, Plaintiff has failed to allege any facts that would demonstrate prejudice or unfairness in the administrative proceedings. The ALJ was forced to evict Plaintiff from the hearing room as a result of his uncooperative and obstreperous behavior.  Plaintiff's conduct during the hearing was unacceptable and disruptive, and therefore the ALJ was justified in his decision to have Plaintiff removed and declared a non essential witness.  Since Plaintiff failed to advance any facts that would tend to demonstrate prejudice or unfairness in the administrative proceedings, the validity of the hearing was not affected by lack of representation in this regard.

Additionally, it is well established that it is a plaintiff's burden to produce full and complete medical records, not the Commissioner's.  *Meanel v. Apfel,* 172 F.3d at 1113.  In general it is the duty of the claimant to prove to the ALJ that she is disabled.  20 C.F.R. § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work.  *Id.*

Here, Plaintiff attempted to introduce purported medical records[6] in his possession at the time of the hearing, having had made no attempt to introduce them earlier.  Allegedly, these records pertained to a recent surgery Plaintiff had undergone.  However, the contents of these records are a mystery since the Plaintiff made no further attempts to introduce them subsequent to the hearing.  Plaintiff had two months from the date he had been noticed to prepare for the hearing, both with regard to obtaining proper counsel and marshaling medical evidence in his favor.  Indisputably, it was "Plaintiff's burden to produce full and complete medical records, not the Commissioner's."  *Meanel v. Apfel,* 172 F.3d at 1113.

Furthermore, the ALJ noted that Plaintiff had filed numerous applications, and had been through the process four times already.  AR 207.  Based on Plaintiff's familiarity with the

---

[6] The medical records in question have not been furnished and their contents are as yet unknown.

1   application process, the ALJ could certainly expect greater preparedness and compliance with the

2   requirements.  The ALJ also observed that Plaintiff's efforts to secure counsel were

3   unenthusiastic and that the last minute continuance requests were completely unacceptable.  AR

4   50.

5          In light of the fact that Plaintiff is conversant with the hearing process, having been

6   through it several times before, and that his preparation for the hearing was lacking in several

7   critical respects, the ALJ had no affirmative duty to go scavenging for medical evidence when

8   Plaintiff had failed in his duty to present them. Furthermore, there was enough in the record to

9   support the ALJ's finding that the evidence was not ambiguous, nor the record inadequate.

10  *Tonapetyan v. Halter*, 242 F.3d at 1150. Having determined that the record in front of him was

11  adequate to enable him to make an informed decision, the ALJ had no further duty to fully and

12  fairly develop the record.

13         Since Plaintiff was unrepresented in this instance, the ALJ had a heightened duty to

14  "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and

15  circumstances" and to remain especially diligent in ensuring that favorable as well as unfavorable

16  facts and circumstances were elicited. *Higbee v. Sullivan*, 975 F.2d at 561. Here, the ALJ

17  conducted a thorough review of the entire record, and finding it to be complete and

18  comprehensive, thereafter made his disability determination. Beyond that, the ALJ had no further

19  affirmative duty to ferret out heretofore unknown medical records, whose contents, relevance and

20  very existence is dubious, since Plaintiff has made no further attempts to admit them following

21  the hearing. Here, it was Plaintiff's duty to bring to the ALJ's attention everything that supports a

22  disability determination, including medical or other evidence relating to the alleged impairment

23  and its effect on his ability to work. Indisputably, the burden was on Plaintiff and he clearly

24  failed to do his part. Therefore, the ALJ was not required to incorporate into a seemingly

25  complete evidentiary file purported medical records that were brought to his attention at the very

26  last minute, and whose contents, time frame, and relevance were questionable, and remain so.

27  Under these circumstances, the ALJ had no further duty to fairly and fully develop the record,

28  and consequently the validity of the hearing was not affected by the lack of counsel since

1  Plaintiff failed to allege any facts that demonstrated prejudice or unfairness in the administrative

2  proceedings.

3  C.  VE Inconsistency with the DOT

4  Plaintiff asserts that the VE testimony in this case has no evidentiary value because the

5  ALJ failed to inquire as to whether the testimony was consistent with the DOT. More

6  specifically, Plaintiff argues that the ALJ could not properly rely on the testimony of the VE

7  without first inquiring whether the VE's testimony was consistent with the DOT.

8  Occupational evidence provided by a VE generally should be consistent with the

9  occupational information supplied by the DOT. S.S.R. 00-4p. When a VE provides evidence

10  about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to

11  ask about any possible conflict between that VE evidence and information provided in the DOT.

12  "ALJ could not rely on the testimony of a vocational expert without first inquiring whether the

13  VE's testimony conflicted with the DOT." *Massachi v. Astrue*, 486 F.3d 1149, 1152-1153 (9th

14  Cir. 2007). Neither the DOT nor the VE evidence automatically "trumps" when there is a

15  conflict. In these situations, the adjudicator will: ask the VE if the evidence he or she has

16  provided conflicts with information provided in the DOT; and if the VE's evidence appears to

17  conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent

18  conflict. *Id.* To deviate from the DOT classification, an ALJ "may rely on expert testimony

19  which contradicts the DOT, but only insofar as the record contains persuasive evidence to

20  support the deviation.*" Tomasetti v. Astrue,* 533 F.3d 1035, 1042 (9th Cir. 2008). Evidence

21  sufficient to permit such a deviation may be either specific findings of fact regarding the

22  claimant's RFC, or inferences drawn from the context of the expert's testimony.

23  Here, the record indicates that the ALJ clearly failed to ask the VE whether his testimony

24  conflicted with the DOT, and if so, whether there was a reasonable explanation for the conflict.

25  Following the VE's identification of other jobs that were available in significant numbers in the

26  regional and national economy, and subsequent to his confirmation that he had taken the right

27  arm limitations into consideration in making his determinations, the ALJ concluded the hearing

28  without once having asked if the VE's testimony was consistent with the DOT. AR 224. Having

1  failed to make this vital inquiry, the ALJ could not properly rely on the VE's testimony. In short,

2  the ALJ failed to act in accordance with the procedural requirements set out in Social Security

3  Ruling 00-4p.

4       Furthermore, based on his review of the entire record, the ALJ concluded that Plaintiff

5  had moderate limitations in understanding, remembering, or carrying out detailed instructions,

6  and that Plaintiff  was limited to performing only simple repetitive tasks. AR 21. Nevertheless,

7  the VE identified the following jobs that Plaintiff could perform, and that were available in

8  significant numbers in the regional and national economy,: Counter clerk (DOT 249.366-010)

9  requiring reasoning at level 2, with an SVP of 2; investigator, dealer accounts (DOT 241.367-

10  038) requiring reasoning at level 4, with an SVP of 2, and finally, election clerk (DOT 205.367-

11  130) requiring reasoning at level 3, with an SVP of 2. AR 223-224.

12       The DOT defines the various reasoning levels as follows:

13       Reasoning level 1: apply commonsense understanding to carry out *simple* one-or two-step

14  instructions. Deal with standardized situations and with occasional or no variables in or from

15  these situations encountered on the job. (Emphasis added).

16       Reasoning level 2: apply commonsense understanding to carry out *detailed* but

17  uninvolved written or oral instructions. Deal with problems involving a few concrete variables in

18  or from standardized situations. (Emphasis added).

19       Reasoning level 3: apply commonsense understanding to carry out instructions furnished

20  in written, oral, or diagrammatic form. Deal with problems involving several variables in or from

21  standardized situations.

22       Reasoning level 4: apply principles of rational systems to solve practical problems and

23  deal with a variety of concrete variables in situations where only limited standardization exists.

24  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.

25       The levels progress in numerical order, each level denoting superior reasoning to the one

26  preceding it. DOT, Appendix C.

27  //

28  //

1    Having been advised by the ALJ that Plaintiff was limited to performing only simple

2    repetitive tasks, the VE nevertheless selected occupations requiring reasoning abilities in excess

3    of those demonstrated by Plaintiff. Since simple repetitive tasks are associated with reasoning

4    level 1, Plaintiff is undoubtedly precluded from performing any work that requires reasoning

5    beyond level 1.  In sum, the VE's specified job categories were simply incompatible with

6    Plaintiff's documented impairments, such as his being restricted to light exertion and simple

7    repetitive work. *Burkhart v. Bowen*, 856 F.2d at 1340 (holding that the vocational expert must

8    identify specific jobs within the claimant's capabilities).

9    "Vocational expert's testimony cannot constitute substantial evidence to support

10   administrative law judge's determination as to social security claimant's disability status unless it

11   accurately reflects all claimant's limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1158 (9th Cir.

12   1989).  "Administrative law judge's conclusion that supplemental security income claimant

13   could engage in substantial gainful activity was not supported by substantial evidence, especially

14   where the vocational expert's testimony did not reflect evidence of claimant's medical and

15   functional impairments."  *Jones v. Heckler*, 760 F.2d at 998.  Because neither the ALJ nor the

16   VE explained the reason for departing from the DOT by selecting jobs requiring reasoning in

17   excess of Plaintiff's demonstrated cognitive capabilities, substantial evidence does not support

18   the ALJ"s conclusion that Plaintiff could perform the jobs identified by the VE, i.e., counter

19   clerk, investigator-dealer accounts, and election clerk.  Since the ALJ's reliance on the VE's

20   testimony was misplaced, the ALJ's determination that there were a significant number of jobs in

21   the regional and national economy that Plaintiff could perform is not supported by the record.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this court is DIRECTED to enter judgment in favor of Plaintiff John A. Martin and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

**Dated:   November 18, 2009**          _____/s/ **Gary S. Austin**_____
                                        UNITED STATES MAGISTRATE JUDGE

25